THE UNION HALL ASSOCIATION *vs.* JAMES MORRISON.

*Meliorations and Improvements—A bona fide Purchaser without Notice of Defect in his Title, is entitled to Compensation for Improvements from the True Owner upon a Bill filed against him for that purpose.*

A. purchased in good faith, for its full value, without notice of any defect in his title, and believing it to be good, a lot of ground, described as part of Military Lot No. 3905, and erected thereon a valuable building. B. was the owner of a tract of land, called "The Trap," but was ignorant of its precise limits until its location was ascertained by actual survey, some years after the erection of the building by A., and it was found to include a part of Military Lot No. 3905. B. thereupon instituted an action of ejectment against certain persons in possession of parts of the said Military Lot, and recovered judgment, which was affirmed on appeal. The lot of ground which had been purchased by A. was found to be included in the lines of the tract called "The Trap," but A. was not made a defendant in the ejectment suit. A writ of *habere facias possessionem* having been obtained by B. under his judgment in ejectment, and the sheriff having declared his purpose to assert his authority by force, if necessary, A. surrendered possession of his lot. Upon a bill filed by A. against B. asking relief, it was HELD:

That A. was entitled to relief in respect to the valuable improvements made by him, but that B. should have the option to accept from A. payment for the lot of ground estimated at its just value, without the improvements thereon, and should, on its receipt, convey the lot to A. by a sufficient deed; or to take and hold the lot with the improvements, paying to A. the actual value of such improvements, to the extent of the additional value which they had conferred upon the land; and in default of such payment the same should be a lien and charge on the property, to be enforced by a sale thereof.

APPEAL from the Circuit Court for Allegany County.

The bill of complaint in this case, the object and purpose of which are stated in the opinion of the Court, was filed by the appellant against the appellee. The Circuit

Court (MOTTER, J.,) passed a decree dismissing the bill, and the complainant appealed.

The cause was argued before BARTOL, C. J., STEWART, BOWIE, MILLER and ALVEY, J.

*R. T. Semmes*, for the appellant.

Is a *bona fide* purchaser without notice of any defect in his title, entitled to compensation for improvements from the true owner, upon a bill filed for that purpose?

If suit were brought against the complainant for rents, issues and profits, there could be no doubt about the right of the complainant to recoup the value of improvements even at law. 2 *Story's Equity Juris., sec.* 799, *note a* and *b, secs.* 1237, 1238, 1239 ; 2 *Kent*, 334, 335, *n. a; Jones vs. Jones*, 4 *Gill*, 102 ; *Greene vs. Biddle*, 1 *Bland*, 71 ; 8 *Wheat*, 369 ; *McLaughlin .vs. Barnum*, 31 *Md.*, 425 ; *Tongue vs. Nutwell*, 17 *Md.*, 212.

Here we have a right both at law and equity, but which is subject to a strange anomaly, that it is useless unless the true owner sues for mesne profits after eject-ment—a thing hardly probable when he finds the im-provements to counterbalance any claim for rents and profits. Evidently a nugatory principle at the very time it ought to be valuable.

One of several tenants in common, who expends money in improving an estate, is entitled to compensa-tion on partition. 2 *Story's Eq. Juris., sec.* 799, *a,* and *note* 3.

If a party, conceiving himself to be the owner, makes lasting improvements, a Court of Equity will not take the estate from him without compelling the plaintiff to make some allowance if he knew nothing of the defect in his title at the time of his purchase, even though ap-prised of the claim of the plaintiff below. *Jones vs. Jones,* 4 *Gill,* 87 ; *Smith vs. Townshend,* 27 *Md.*, 368.

From these authorities it will be seen that the right of the *bona fide* possessor to compensation for improvements, after ejectment by the legal owner, is recognized. The only question, therefore, is whether the Courts which recognize this right are going to say that there is no independent remedy.

It is said there is no precedent, and the simple statement of that fact, enunciated in *Kent's Commentaries* and the text of *Story's Jurisprudence*, unsupported by any authority but Chancellor WALWORTH, in 6 *Paige*, itself based on the want of precedent, not on the strength of argument, is relied on to prevent an act of the simplest justice. The text in 2 *Story's Eq. Juris.*, sec. 799, *b.*, states: "They have never, in a direct suit by the *bona fide* possessor, enforced his claim to meliorations of the property from which he has been evicted by the true owner." The authority for this statement appears in the note to be *Putnam vs. Ritchie*, 6 *Paige*, 390, 403 to 405 inclusive, in which Chancellor WALWORTH refused to grant the relief because there was no precedent; not because it was not justice, common sense and common honesty. Mr. Justice STORY afterwards declined to follow said decision or refusal, and granted the relief prayed, as he says, because "it has the most persuasive equity, and I may add, *common sense* and *common justice* for its foundation." *Bright vs. Boyd*, 1 *Story's Rep.*, 478, and 2 *Story's Rep.*, 605. The facts of *Bright vs. Boyd* are identical with the case at bar. In this case it is plain that the only loser can be the complainant, that Morrison has never spent a cent on the property, and that on the supposition that both are innocent, by giving him the value of his land, equal justice and equity could be done without injury to anybody.

The learned Judge below, in giving his opinion, seems to think that the weight of authority is against the relief sought in this case. This it is submitted is error, for

the proposition, as enunciated in Kent and Story, is not that the power does not exist to grant such relief, but simply that the Courts have not exercised it. And to support this proposition we have standing alone the case of *Putnam vs. Ritchie,* 6 *Paige,* 390 to 405.

And to support the proposition of the appellant that Courts of Equity will grant relief on a bill filed for the purpose, to the *bona fide* possessor without notice of defect in his title, we have *Bright vs. Boyd,* 1 *Story,* 478, and 2 *Story,* 505 ; *Thomas vs. Thomas,* 16 *B. Monroe,* 421; *McKelway vs. Amon,* 2 *Stock. Chy.,* 115 ; *Blackwell on Tax Titles,* 589, and notes; together with all the cases in this country and in our own State, which give relief when the worthy claimant of improvements can take advantage of them to resist a claim for rents, issues and profits by recoupment.

It only remains to be seen whether the facts of this case fix upon Morrison such a knowledge of his title and its effects as to make it a fraud in him to seek to deprive the appellant of the improvements, which cost it $3,000 and him nothing. 1 *Story's Eq. Juris.,* sec. 388, and notes 3 and 4, sec. 389, sec. 385; *Wendell vs. Van Rensselaer,* 1 *Johns. Ch. R.,* 354 ; *Bright vs. Boyd,* 1 *Story,* 478; *Price and Bevans vs. McDonald, et al.,* 1 *Md.,* 419 ; *Hoffman vs. Smith,* 1 *Md.,* 491; *Tongue's Lessee vs. Nutwell,* 17 *Md.,* 212 ; *Smith vs. Townshend, et al.,* 27 *Md.,* 388.

The history of his title, as set out in 33 *Md.,* 96, is that the patent for "The Trap" had been in the possession of Morrison's family for years, and had been handed down from generation to generation by devise; he, and those under whom he claimed, had been in possession of it, and had slept upon their rights so long as to leave the whole community in ignorance of the extent of his claim. Can it be possible that such laches as this shall not operate against him? Is it possible that a Court of Equity will deem the public bound by such notice, and yet re-

lieve Morrison of the effect of such knowledge? If the appellant is bound to know the extent of his lines, he is also bound by them, and it was as much his duty to notify the appellant not to build, under penalty of loss of its improvements, as it was for the appellant to know that it was building on his lands. *Price & Bevans vs. McDonald, et al.*, 1 *Md.*, 419.

To deny this is to allow the holder of title to maintain ignorance of the lines of his land, by neglecting to have it surveyed, and after innocent parties have improved and built upon it, to take advantage of his own wrong by grabbing up the improvements without any compensation whatever. Can there be a more palpable opening for fraud?

*J. H. Gordon*, for the appellee.

The question presented by this case is, whether a party claiming to be the owner of land in Maryland, where the titles are all of record, is bound by the principle of *caveat emptor*, and required to know the sufficiency of his own title and extent of his lines ; or, whether a squatter upon the adjoining land of his neighbor, who makes improvements and takes the chance of holding for twenty years, and thereby establishes a title by adversary possession, can, if he is interrupted before the twenty years are complete and his possession is broken by a recovery in ejectment, turn round and recover in equity the value of his improvements made while so in possession?

To permit such a recovery would encourage the grossest frauds and relieve trespassers from one of the punishments which the law justly inflicts upon them in the loss of their improvements.

Courts of Equity do not interfere by giving relief in cases of improvements made by one person on the lands of another, unless they are made under some agreement which would entitle the party to relief, or where a bill is

filed by the legal owner for an amount of rents and profits, in which case the party making the improvements has a right to a deduction by way of recoupment.   Or where a party having the title does some act to encourage the purchaser to make the improvements, which would amount to a fraud ; in which case he would be estopped to claim the property until he pays for the improvements. *Earl of Oxford's Case,* 3 *Lead. Cases in Equity,* 166 ; *Master of Clare Hall vs. Harding,* 4 *Harr.,* 273.

Justice STORY, in his *Equity Jurisprudence, vol.* 2, *sec.* 799, says :  "In the present state of the authorities, involving as they do, some conflict of opinion, it is not possible to affirm more than that the jurisdiction for compensation or damages does not ordinarily attach in equity, except as ancillary to a specific performance, or some other relief.   If it does attach in any other cases, it must be under very special circumstances, and upon peculiar equities, as, for instance, in cases of fraud, or in cases where the party has disabled himself by *matters ex post facto* from a specific performance, or in cases where there is no adequate remedy at law."

The rule given then by STORY is, "*that jurisdiction does not ordinarily attach in equity.*"   The complainant must therefore bring itself within one of the exceptions to entitle it to relief.   There is no specific performance claimed in this case, nor other relief of any kind to which the complainant's claim is ancillary.   There are no special circumstances, such as fraud, to give jurisdiction, and no matters *ex post facto,* so that there is no possible exception to the ground ruled in this case to authorize the relief prayed.

The only special ground of relief which would exist in this case, would be the fraudulently standing by of Morrison, and wilfully and knowingly permitting the expenditures to be made by the complainant on his ground without notice.   That, too, is the ground upon which the

case was intended to be put, but the evidence fails to make such a case. The agreement shows that Morrison did not know himself that the building was on his land till 1867. The complainant was not even a *bona fide* purchaser without notice. The bill does not state, nor does the proof show, that Hammond was in possession at the time the complainant bought, which is necessary to give color to such a claim. *Baynard vs. Norris*, 5 *Gill*, 482.

But the possession of "*The Trap*" was in Morrison, as well as the legal title, as shown by the case referred to by the bill. *Hammond, et al. vs. Morrison's Lessee*, 33 *Md.*, 96. The complainant was therefore charged with all the rights of Morrison, and bound to respect them. *Hardy & Talburtt vs. Summers*, 10 *G. & J.*, 324; *Baynard vs. Norris*, 5 *Gill*, 483. The complainant was also charged with notice, because the titles were on record, and the principle of estoppel would not assist him without actual fraud. *Tongue's Lessee vs. Nutwell*, 17 *Md.*, 230; *Casey's Lessee vs. Inloes*, 1 *Gill*, 501, 502.

The case *Bright vs. Boyd*, purports upon its face to be unauthorized by either English or American precedent. It was an avowed effort of the Chancellor to introduce a new ground of equity from the civil law. But it was against all the authorities, and has not been followed, and cannot be recognized, as appears from the case of *Putnam vs. Ritchie*, 6 *Paige*, 390, 403 and 404; also by *Story's Eq. Juris.*, secs. 388, 389, 799, 799*a*, 799*b*, 1237, 1238; 3 *Sugden on Vend.*, ch. *XXII*.

The whole doctrine is stated in this chapter, and summed up in sec. 55, as follows: "But if the aid of a Court of Equity is not required, and a person can recover the estate at law, equity, unless there be fraud, cannot, it is conceived, relieve the purchaser on account of money laid out in repairs and improvements, but must dismiss the bill for that purpose with costs." *McLaughlin vs. Barnum*, 31 *Md.*, 456; *Railroad Company vs. Soutter*, 13

*Wallace,* .623; *Neesom vs. Clarkson,* 2 *Hare,* 173 and 4 *Hare* 97.

BARTOL, C. J., delivered the opinion of the Court.

The questions presented by this appeal arise upon the following state of facts: The appellant, an association duly incorporated, purchased from Thomas Hammond a small lot of vacant ground 50 by 130 feet in extent, situated in Hammond's Addition to Westernport, in Allegany County for $125.00, which, according to the proof, was its full value, went into possession thereof and erected thereon an expensive building, costing $3000. The building was erected in 1859–1860. On the 23rd day of April, 1861, the lot was conveyed to the appellant by Thomas Hammond, and is described in the deed as part of Military Lot, No. 3905. It appears that in March, 1814, a patent had been issued by the State to one Thomas Johnson, of Military Lot, No. 3905, (with others), and that the title thereto has been conveyed by regular mesne conveyances down to Thomas Hammond, from whom the appellant purchased.

The appellee held title to a tract of land called " *The Trap,*" which had been patented to Magruder, in 1803; but was ignorant of its precise limits, until in 1867, its location was ascertained by actual survey, and it was found to include a part of Military Lot, No. 3905, whereupon the appellee, in 1868, instituted an action of ejectment against certain persons then in possession of parts of the said Military Lot, and recovered judgment, which was affirmed by this Court, in 33 *Md.,* 95, on the ground that Morrison's title was superior to Hammond's. The lot of ground which had been purchased and improved by the appellant, was included in the lines of the tract called "The Trap," but the appellant was not made a defendant in the action of ejectment. Afterwards, on the 24th day of September, 1870, a writ of *habere facias pos-*

*sessionem* having been obtained by the appellee under his judgment in ejectment, the sheriff demanded thereunder the possession of the house erected by the appellant; and declaring his purpose to assert his authority by force if necessary, the possession thereof was surrendered by Fredlock, the President of the Association; and the appellee asserts his title thereto, and claims to hold the same as legal owner.

Whereupon the bill of complaint in this case was filed by the appellant, alleging that it purchased the lot of ground and made valuable improvements thereon in good faith, believing that its title thereto was good, and without any knowledge of any adverse claim in any one, and without any notice that the appellee had any right or claim whatever thereto.   The bill alleges that the appellant is without remedy at law, by reason of the defect in its title purchased in good faith, and prays relief; averring that it has an equitable claim against the appellee to be remunerated for the valuable improvement erected upon the lot, and that for its claim in this behalf, it has an equitable lien upon the land.   It avers that it is ready and willing to account to the appellee, and pay him a fair and reasonable compensation as ground rent for the use of the lot, without the improvements, to be fixed by a decree of the Court; and prays that the appellee may be decreed to pay to the appellant whatever balance may be found due upon the statement of an account allowing him a fair ground rent as offered; and that the lands may be sold to satisfy the lien of the appellant; or that it may have such other and further relief as its case may require.

The bill charges substantially, as one ground for relief, that the appellee had full knowledge of his title since 1842; and while he was all the time cognizant of his right, and living in the neighborhood, suffered the appellant to go on in the erection of the building upon his ground, and to expend large sums of money, without

giving the appellant any notice of his claim, and did not set up his right till afterwards.

The general principle is well established that "if a man, supposing he has an absolute title to an estate, should build upon the land, with the knowledge of the real owner, who should stand by and suffer the erections to proceed, without giving any notice of his own claim; he would not be permitted to avail himself of such improvements, without paying a full compensation therefor; for, in conscience, he was bound to disclose the defect of title to the builder." 1 *Story Eq. Juris.*, sec. 388.

This general principle has been recognized by the Court of Appeals in *Casey vs. Inloes*, 1 *Gill*, 432; *Hoffman vs. Smith*, 1 *Md.*, 475, 491; *Tongue vs. Nutwell*, 17 *Md.*, 212; but in those cases it was held to be inapplicable. A reference to them will show that the general principle, must be understood with certain qualifications: some of these are thus clearly stated by Judge STORY, 1 *Eq. Juris.*, sec. 386: "In order, however, to justify the application of this cogent moral principle, it is indispensable that the party so standing by and concealing his rights, should be fully apprised of them, and should, by his conduct, or gross negligence encourage or influence the purchase; for if he is wholly ignorant of his rights, or the purchaser knows them; or, if his acts, or silence, or negligence, do not mislead, or in any manner affect the transaction, there can be no just inference of actual or constructive fraud on his part. [For a right can be lost or forfeited only by such conduct, as would make it fraudulent, or against conscience to assert it."]

This qualification of the general rule is stated in the text books, and asserted by all the well adjudged cases, which need not be here cited. It rests on the plainest principles of reason and justice which always govern the law of equitable estoppel. Applying this rule to the case before us, we concur in the opinion expressed by the

Judge of the Circuit Court, that the charge of constructive fraud on the part of the appellee is not sustained.

The facts touching this point, are stated in a written agreement, signed by the solicitors, as follows:

That " James Morrison was a resident of Allegany County, and resided about three or four miles from said premises, about the time of the erection of the brick building by the Union Hall Association, and knew of its erection, and being erected, but that he had no knowledge of the particular location of said tract of land called ' The Trap,' or of the lot claimed by said complainant at the time of said erection, and never did know the exact location of said tract of land, until he had a survey thereof made by James Chisholm, surveyor, about the year 1867, and that he then knew for the first time that said brick building was upon said tract called ' The Trap.' "

Now upon this state of facts, it is very clear that there has been nothing in the conduct of the appellee creating an equitable estoppel; his silence and acquiescence at the time of the purchase by the appellant, and during the erection of the building, cannot conclude him, because it is conceded that he was ignorant of his rights to the lot of ground in question until 1867. It has been argued by the appellant, that as he was cognizant of his title, to the tract called "The Trap," the law imputes to him knowledge of its limits and extent; but such a presumption cannot arise against the positive admission, that he was in fact ignorant of its true location ; and that he did not know till 1867, that the building erected by the appellant, was embraced within its lines.

Nor is there any ground for imputing to him gross negligence, creating an estoppel. This is not a case to which that doctrine can apply. There was no privity between him and the appellant; they were strangers to each other, and there is no evidence that the appellee

encouraged or influenced the appellant to purchase the lot or erect the building, or had any actual connection therewith.

We conclude, therefore, that the appellant is not entitled to relief upon the ground of any fraud, actual or constructive, on the part of the appellee, or of any equitable estoppel arising from the conduct or acquiescence of the latter. On the other hand, there is no doubt or question as to the *bona fides* of the appellant. It purchased the lot in good faith for its full value, and erected the building in the honest belief that it had a good title, and was ignorant that the same was contested by the appellee, or any other person claiming a better right. The appellant, therefore, comes strictly within the definition of a "*bona fide possessor*," according to the doctrine of the Civil Law, (31 *Md.*, 454.) The equitable rights of a party so situated, to an allowance for improvements, in a suit against him by the real owner, were fully considered by this Court, in the recent case of *McLaughlin vs. Barnum*, 31 *Md*, 425. There is no doctrine of equity better established, than that a *bona fide* possessor is entitled to such allowance, where he is the defendant, and the rightful owner seeks the aid of the Court to recover rents and profits, or to enforce his title against him. "In such cases, a Court of Equity practically enforces the rule of the Civil Law, founded in natural justice *nemo debet locupletari aliena jactura*, as well as the cherished maxim of equity jurisprudence, '*that he who seeks equity must do equity*,'" 31 *Md.*, 453. In the case just cited, it was said to be doubtful, "whether from the present state of the authorities, the weight of judicial opinion and precedent goes farther than to sanction the exercise of the jurisdiction in such cases in favor of *defendants*, or as auxiliary to some other relief properly cognizable in equity." On that question, however, no opinion was expressed, the Court said "the case before us does not call for any judgment upon that point."

In this case, the question is directly presented, and we have given it all the consideration its importance demands. It may be conceded, that there is an absence of precedent in the English cases, maintaining the right of a *bona fide* possessor to sustain a bill of this kind, except upon some ground of fraud or estoppel, growing out of the conduct of the owner of the land ; and consequently, we find in the text books, where the cases are referred to, and the general principles stated, the rule allowing to a *bona fide* possessor compensation for improvements, is said to be limited to cases where he is defendant. In 3 *Sugden, Vendors & Purchasers, ch.* 22, *sec.* 1, *pl.* 55, the learned author says, "But if the aid of a Court of Equity is not required, and a person can recover the estate at law, equity, unless there be fraud, cannot, it is conceived, relieve the purchaser on account of money laid out in repairs and improvements ; but must dismiss a bill for that purpose with costs."

In 2 *Story's Eq. Jur.*, *sec.* 1238, the rule is stated in the same way ; for which the passage in SUGDEN is cited.

But no case is cited by either SUGDEN or STORY, in which the precise question has arisen, and relief has been refused. We may except the case of *Putnam vs. Ritchie*, 6 *Paige,* 390, in which Chancellor WALWORTH refused to grant relief for the reason, that "he had not been able to find any case either in this country or in England, wherein the Court of Chancery has assumed jurisdiction to give relief to a complainant who has made improvements on land, the legal title to which was in the defendant, where there has been neither fraud, nor acquiescence on the part of the latter after he had knowledge of his legal rights." The learned Chancellor thought to do so, would be introducing a new principle into the law of the Court. Some years after the decision of *Putnam vs. Ritchie*, the question arose before Judge STORY in *Bright vs. Boyd,* 1 *Story's Rep.*, 478, upon a bill filed by a *bona fide*

purchaser, claiming compensation for improvements. The learned Judge said, (p. 494,) "Upon the general principles of Courts of Equity, acting *ex æquo et bono,* I own that there does not seem to me any just ground to doubt that compensation, under such circumstances, ought to be allowed to the full amount of the enhanced value, upon the maxim of the Common Law, *Nemo debet locupletari ex alterius incommodo.*" After referring to the well settled doctrine of Courts of Equity, under which allowance is made to a party defendant, by way of *recoupment* out of the rents and profits, or in cases where the aid of the Court is asked by the owner of an equitable title to enforce that title, Judge STORY says, (p. 495,) "But it has been supposed, that Courts of Equity do not, and ought not to go further, and to grant active relief in favor of such a *bona fide* possessor, making permanent meliorations and improvements, by sustaining a bill brought by him therefor, against the true owner, after he has recovered the premises at law. I find that Chancellor WALWORTH, in *Putnam vs. Ritchie,* (6 *Paige, R.,*) entertained this opinion, admitting at the same time, that he could find no case in England or America, where the point had been expressly decided either way. Now, if there be no authority against the doctrine, I confess, that I should be reluctant to be the first Judge to lead to such a decision. It appears to me, speaking with all deference to other opinions, that the denial of all compensation to such a *bona fide* purchaser, in such a case, where he has manifestly added to the permanent value of an estate by his meliorations and improvements, without the slightest suspicion of any infirmity in his own title, is contrary to the first principles of equity. Take the case of a vacant lot in a city, where a *bona fide* purchaser builds a house thereon, enhancing the value of the estate to ten times the original value of the land, under a title apparently perfect and complete ; is it reasonable or just, that in

such a case the true owner should recover and possess the whole, without any compensation whatever to the *bona fide* purchaser? To me it seems manifestly unjust and inequitable, thus to appropriate to one man, the property and money of another, who is in no default. The argument, I am aware is, that the moment the house is built, it belongs to the owner of the land by mere operation of law; and that he may certainly possess and enjoy his own. But this is merely stating the technical rule of law, by which the true owner seeks to hold, what in a just sense, he never had the slightest title to, that is, the house. It is not answering the objection; but merely and dryly stating, that the law so holds. But, then, admitting this to be so, does it not furnish a strong ground why equity should interpose and grant relief?"

We have cited the language of Judge STORY at considerable length, because it has appeared to us to be quite applicable to the present case, and expresses clearly and forcibly, the grounds upon which rests the claim of the appellant for relief. The case of *Bright vs. Boyd,* came again before Judge STORY for final decree, upon the report of the master. (2 *Story's R.,* 605, 607.) When he said, "I have reflected a good deal upon the present subject; and the views expressed by me at the former hearing remain unchanged; or rather to express myself more accurately, have been thereby strengthened and confirmed," and he decreed accordingly: using this emphatic language, "I wish, in coming to this conclusion, to be distinctly understood as affirming and maintaining the broad doctrine, as a doctrine of equity, that so far as an innocent purchaser for a valuable consideration, without notice of any infirmity in his title, has by his improvements and meliorations, added to the permanent value of the estate, he is entitled to a full remuneration, and that such increase of value is a lien and charge on the estate, which the absolute owner is bound to discharge

before he is restored to his original rights in the land. This is the clear result of the Roman law, and it has the most persuasive equity, and I may add common sense, and common justice for its foundation."

This careful and well considered decision meets with our entire approval, and rests upon such plain principles of equity, that we have no hesitation in adopting it, as applicable to the case before us. It seems to us that so far from introducing any "new principle into the law of the Court" as said by Chancellor WALWORTH, it is nothing more than the application of the well settled principles of Equity, to a case coming clearly within their scope and operation. It can make no difference in the equitable rights of the appellant, whether it appears in the character of complainant or defendant.

In support of the views expressed by Judge STORY, the case of *Bright vs. Boyd,* does not stand alone. The Supreme Court of Kentucky decided the question in the same way, (in 1855), in *Thomas vs. Thomas' Ex'cr,* 16 *B. Monroe,* 421, granting relief to a *bona fide possessor,* upon a bill filed by him against the parties holding the legal title; and in *McKelway vs. Armour,* (2 *Stockton's Chy. R.,* 115), a bill was filed "to relieve the complainant from the embarrassment of having erected a valuable dwelling house by mistake, on the land of the defendant Armour." Chancellor WILLIAMSON thus states the facts of the case. "It is proved beyond all doubt that the complainant erected his improvements on this lot by mistake, he supposed that it was the lot next, that belonged to Armour. Armour labored under the same mistake. He lived in the vicinity; he saw the complainant progressing from day to day with these improvements. If he knew this to be his lot, his silence was a fraud upon the complainant, but this is not pretended. He admits that he did not suspect the erections to be upon his lot until some time after their erection, when by actual measurement, to his

surprise, he discovered the mistake. Under such circumstances, it would be most unjust to permit Armour to take these improvements, and to send the complainant away remediless;" and accordingly relief was decreed in favor of the complainant.

These cases are cited to show that this question, although now for the first time presented to this Court for adjudication in its present form, is not without precedent elsewhere. It has been argued that the appellant was guilty of laches and neglect in failing to adopt proper means to ascertain the state of the title before purchasing the lot, or making the improvements, by an examination of the land records. It is obvious, however, that such an examinaion could not have led to the information desired. The difficulty has arisen not from the state of the title, but from the location of the appellee's tract, which was not even known to the appellee himself until it was ascertained by actual survey in 1867. The witness Patrick Hamill, who was present at the survey, says, "I don't think the line is more than from three to ten feet from the building; I don't know that Morrison knew where the lines of '*The Trap*' were, previous to that time; that was the first authenticated beginning that I ever knew; there was a good deal of trouble in finding the lines of the said tract." Under these circumstances, it is impossible, with justice, to deny to the appellant relief, on the ground of laches in not ascertaining the true location of "The Trap," or that the lot in question was included within its lines. There was nothing in the situation of the property to suggest any doubt as to the title of Hammond or to put the appellant on inquiry. The lot was not inclosed in "The Trap;" but was vacant, and had been laid out by Thomas Hammond as a town lot in Hammond's Addition to the village of Westernport. No fault or laches, therefore, can be imputed to the appellant, and we are of opinion that it is entitled to re-

lief, in respect to the permanent and valuable improvements; the decree of the Circuit Court will be reversed and the cause remanded, to the end that a decree may be passed in accordance with this opinion and the equitable rights of the parties. With respect to the nature and terms of the decree it will be proper that the appellee shall have the option to accept from the appellant payment for the lot of ground, estimated at its just value, without the improvements thereon, and be required on the payment thereof with interest, to convey the same to the appellant, by a sufficient deed. Or at his election to take and hold the lot with improvements, paying to the appellant the actual value of the improvements, to the extent of the additional value which they have conferred upon the land, and in default of such payment, the same ought to be declared to be a lien, and charge on the property, and the lot and improvements should be decreed to be sold for the payment thereof.

*Decree reversed and*
*cause remanded.*

(Decided 22nd January, 1874.)