# SUPPLEMENT.

[United States Circuit Court for the District of Connecticut, May Term, 1880.]

## CHARLES L. GRISWOLD vs. FREDERICK A. BRAGG & WIFE.

The statute of Connecticut (Gen. Statutes, tit. 18, ch. 7, sec. 17,) provides that where a defendant in an action of ejectment has, before the suit was brought, in good faith and believing that he had an absolute title, made improvements on the land, the court shall ascertain the present value of the land and the amount reasonably due the plaintiff for its use and occupation, and if the value of the improvements exceeds the amount due for use and occupation, final judgment shall not be rendered until the plaintiff shall have paid the balance to the defendant; but if the plaintiff shall elect to have the title confirmed in the defendant, the court shall ascertain what sum the defendant ought in equity to pay to the plaintiff, and on its payment may confirm the title in the defendant. Held to be a valid statute, and one which the United States Circuit Court would administer on a bill filed on the equity side of the court by a defendant in an action of ejectment.

The statute does not impair the obligation of contracts, nor deprive a person of his property without due course of law, nor deprive him of his right of trial by jury.

SHIPMAN, J. At the September term, 1879, of this court, the jury returned a verdict, in an action of ejectment, in favor of the present defendants against the present plaintiff, that they recover the seizin and possession of an undivided fourth part of a tract of land in the town of Chester. Upon motion of the defendant in the ejectment suit, judgment and execution were stayed until further order. He thereupon filed a supplemental bill on the equity side of the court. This bill, after setting out the state statute hereinafter recited, commonly called the "Betterment Act," alleges, in substance, that the plaintiff and those under whom he claims have held said land by a series of connected conveyances since 1846, which deeds purported to convey, and were intended and believed to convey, an absolute estate in fee simple, and that the plaintiff and his grantors have had uninterrupt-

VOL. XLVIII.—73

ed possession since 1846, under a like belief that they had an absolute estate, and that, during this time, and before the commencement of the ejectment suit, improvements of the value of $10,000 have been made on said land by said reputed owners, in good faith, and in the like belief, and prays that the present value of said improvements, and the excess of the value thereof over the amount due to the defendants for the use and occupation of said premises, may be ascertained, to the end that the equitable relief provided by said statute may be granted. To this bill the defendants have demurred. Their title became vested in them in 1878.

The statute (Revision of 1875, p. 362, sec. 17,) provides as follows: "Final judgment shall not be rendered against any defendant in an action of ejectment, who, or whose grantors or ancestors, have in good faith, believing that he or they, as the case may be, had an absolute title to the land in question, made improvements thereon before the commencement of the action, until the court shall have ascertained the present value thereof and the amount reasonably due to the plaintiff from the defendant for the use and occupation of the premises; and, if such value of such improvements exceeds such amount due for use and occupation, final judgment shall not be rendered until the plaintiff has paid said balance to the defendant; but if the plaintiff shall elect to have the title confirmed in the defendant, and shall upon the rendition of the verdict file notice of such election with the clerk of the court, the court shall ascertain what sum ought in equity to be paid to the plaintiff by the defendant, or other parties in interest, and, on payment thereof, may confirm the title to said land in the parties paying it." The original statute was passed June 26, 1848. (Laws of Connecticut, 1848, p. 48.) It plainly appears from the act as passed, and as reproduced in the revisions of 1849 (p. 112, sec. 223,) and 1866 (p. 63, sec. 281,) that the proceeding in the state court, upon the motion of the defendant, after the verdict, is a proceeding in equity.

The question of law which is raised by the demurrer is in regard to the validity of this statute. It is not denied that

the statutes of the several states in regard to realty, except when the constitution, treaties or statutes of the United States otherwise require or provide, which are in conformity with the constitutions of the respective states, are rules of property and rules of decision in the courts of the United States, (*Bank of Hamilton* v. *Dudley's Lessee*, 2 Peters, 492) ; and that, if a state legislature has created a right and established a remedy in chancery to enforce such right, such remedy may be pursued in the federal courts, if it is not inconsistent with their constitution, (*Clark* v. *Smith*, 13 Pet., 195 ; *Ex parte Biddle*, 2 Mason, 472) ; and that an inability of the federal courts to proceed in the exact mode provided by a state statute need not preclude a party from the benefit of the relief which is intended to be granted, if the modes of proceeding in courts of chancery are adapted to carry into effect the statute, (*Bank of Hamilton* v. *Dudley's Lessee*, cited *supra*.) This is true, although the right which has been established by the local statute is a new right, and one previously unknown to a court of chancery in this country or in England. *Lorman* v. *Clarke*, 2 McLean, 568 ; *Bayerque* v. *Cohen*, 1 McAll., 113. The practice in equity is, in general, except when otherwise directed by statute or by the rules of the Supreme Court, regulated by the English chancery practice as it existed in 1842, before the adoption of the "New Rules." Equity Rule, 90 ; *Badger* v. *Badger*, 1 Cliff., 237 ; *Goodyear* v. *Rubber Co.*, 2 Cliff., 351.

The statute practically impresses upon the land of a successful plaintiff in ejectment a lien for the excess, above the amount due for use and occupation, of the present value of the improvements which have been placed on the land, before the commencement of the action, by a defendant or his ancestors or grantors, in good faith, and in the belief that he or they had an absolute title to the land in question, and forbids occupancy by the plaintiff until the lien is paid. There is a natural equity which rebels at the idea that a *bonâ fide* occupant and reputed owner of land in a newly-settled country, where unimproved land is of small value, or where skill in conveyancing has not been attained,

or where surveys have been uncertain or inaccurate, should lose the benefit of the labor and money which he had expended in the erroneous belief that his title was absolute and perfect. While it is true that improvements and permanent buildings upon land belong to the owner, yet in a comparatively newly-organized state, where titles are necessarily more uncertain than they are in England, there is an instinctive conviction that justice requires that the possessor under a de. fective title should have recompense for the improvements which have been made in good faith upon the land of another. The maxim, often repeated in the decisions upon the subject, " *Nemo debet locupletari ex alterius incommodo,*" tersely expresses the antagonism against the enrichment of one out of the honest mistake and to the ruin of another. It is obvious that this statutory equity is not without occasional hardships. The true owner may be forced to sell his land against his will, and may sometimes be placed too much in the power of capital, but a carefully regulated and guarded statute should ordinarily be the means of doing exact justice to the owner.

It is well known that the English law made no provision for reimbursement of expenditures of this kind, as against the owner of the legal title, except by allowing the *bonâ fide* occupant to recoup the value of his improvements, when he is a defendant in a bill in equity praying for an account of rents and profits. The established theory was, that a court of equity should not go any further and " grant active relief in favor of such a *bonâ fide* possessor making permanent meliorations and improvements, by sustaining a bill, brought by him therefor, against the true owner, after he has recovered the premises at law." *Bright* v. *Bozet,* 1 Story, 478, 495. Such was the opinion of Chancellor Walworth, in *Putnam* v. *Ritchie,* 6 Paige, 390, and such may be taken to be the state of law in this country, in 1841, apart from local statutes, and of the English law then and now. In 1841 Judge Story decided, in *Bright* v. *Bozet,* in favor of the power of courts of equity to grant affirmative relief at the suit of a *bonâ fide* possessor against the true owner, and in 1843

re-stated his opinion, after an additional hearing of the same case. 2 Story, 605. The learned judge thus states his view of the law. " I wish, in coming to this conclusion, to be distinctly understood as affirming and maintaining the broad doctrine, as a doctrine of equity, that, so far as an innocent purchaser for a valuable consideration, without notice of any infirmity in his title, has, by his improvements and meliorations, added to the permanent value of the estate, he is entitled to a full remuneration, and that such increase of value is a lien and charge on the estate, which the absolute owner is bound to discharge before he is to be restored to his original rights in the land. This is the clear result of the Roman law ; and it has the most persuasive equity, and,. I may add, common sense and common justice for its foundation." This opinion of Judge Story, though often favorably quoted, cannot be considered as the established law of this country, apart from the statute, because it has rarely had occasion to be reviewed, inasmuch as the " betterment acts " have become the predominant statutory system of the country. The Supreme Courts of Missouri, Maryland and Oregon, states which apparently have no statute on the subject, have adopted his views. *Valle's Heirs* v. *Fleming's Heirs*, 29 Missouri, 152, (1859 ;) *Union Hall* v. *Morrison*, 39 Md., 281, (1873 ;) *Hatcher* v. *Briggs*, 6 Oregon, 31, (1876.)

The theory of the Connecticut statute is that of Judge Story, that an equitable lien is placed upon the land for the value of the improvements which the *bonâ fide* occupant has innocently made. Furthermore, the legal owner has his election either to take possession of the land by paying the lien, or to receive, in lieu of the land, the sum which the court shall ascertain to be equitably due him. The owner's title is not forced away from him, but the equitable lien of the occupant is preserved. There is no election on the part of the occupant to keep the land and thus compel the owner to abandon his title, neither is any judgment rendered against the owner for the value of the improvements, to be enforced by levy of execution. These two provisions in the statutes of Ohio and Iowa respectively were held to be unconstitu-

tional, upon the ground that they invaded the rights of private property as secured by the constitutions of the respective states. *McCoy* v. *Grandy*, 3 Ohio St. R., 463; *Childs* v. *Shower*, 18 Iowa, 261. It may be remarked that the original statute of 1848 provided that "the court shall order and decree the balance so found due to be paid." This clause is not found in the present statute, and the amount of the lien cannot, apparently, be collected by levy upon the defendant's property.

The statute is said to be unconstitutional in that it impairs the effect of conveyances, in violation of the provision of the constitution of the United States, (Art. 1, sec. 9,) which prohibits a state from passing a law impairing the obligation of contracts, and that, as regards pre-existing conveyances or estates, it is contrary to the state constitution, because it deprives a person of his property without due course of law, and deprives him of his right of trial by jury.

I do not think that it is necessary to enter into a critical examination of these constitutional provisions. The defendant's suggestions are founded upon a harsh view of the nature of the statute. It does not impair the obligation of any contract between the owner and his grantor or between the state and the owner. It interferes with no legal title. It interferes with, and is an abridgement of, the right to the immediate possession and beneficial enjoyment of property, as that right existed at common law, and, to that extent, impairs the interest which owners formerly had in lands. It cannot be said to be an unjust or unreasonable limitation of the common law right of possession, but on the contrary the provisions are reasonable. *Society* v. *Wheeler*, 2 Gall., 105; *Jackson* v. *Lamphire*, 3 Pet., 280; *Curtis* v. *Whitney*, 13 Wall., 68; *Welch* v. *Wadsworth*, 30 Conn., 149.

Discussion upon the constitutionality of this statute has not, apparently, arisen in the courts of this state. An examination of decisions elsewhere upon statutes of this class shows, that *Green* v. *Biddle*, 8 Wheat., 1, decided that the betterment act of Kentucky was unconstitutional because it was a violation of the compact between Virginia and Ken-

tucky. It may fairly be inferred, from the express views of the court, as given by Judges Story and Washington, that it disliked the statute irrespective of the contract and was not satisfied with its provisions. These dicta may properly be read in the light of the decision in *Bank of Hamilton* v. *Dudley's Lessee*, 2 Pet., 492, in which case no opinion was expressed upon the general principles of the betterment act of Ohio. The constitutionality, with relation to the constitutions of the respective states whose courts gave the decisions, or the justice of statutes similar in substance or in principle to the Connecticut statute, has been learnedly discussed and sustained in the following among other cases :— *Withington* v. *Corey*, 2 New Hamp., 115; *Whitney* v. *Richardson*, 31 Vt., 300; *Armstrong* v. *Jackson*, 1 Blackf., 374; *McCoy* v. *Grandy*, 3 Ohio St. R., 463; *Ross* v. *Irving*, 14 Ill., 171; *Childs* v. *Shower*, 18 Iowa, 261. The constitutionality of the Tennessee statute was condemned in *Nelson* v. *Allen*, 1 Yerger, 376. Judge Catron says that the question of constitutionality did not properly arise in that case, and expresses no opinion upon the point.

The demurrer is overruled.

*R. D. Hubbard* and *W. F. Willcox*, for the plaintiff.

*S. E. Baldwin*, for the defendant.