[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO STRIKE
The complaint is in six counts. The first count alleges breach of contract. The second count alleges breach of duty of good faith and fair dealing. The third count alleges Promissory Estoppel. The fourth count alleges Negligent Misrepresentation. The fifth count alleges Tortious Interference. The sixth count alleges violation of Connecticut Unfair Trade Practices Act.
The defendant moves to strike counts three, four, five and six of the complaint.
"In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff." NovametrixMedical Systems, Inc. v. BOL Group, Inc., 224 Conn. 210, 215
(1992).
 I. Count Three of the Complaint.
It is the defendant's position that because an enforceable contract does exist the parties cannot assert a claim for promissory estoppel based on alleged promises that contradict the written contract. The defendant cites a number of superior court cases which appear to support that position.
The defendant's position, from a technical standpoint, is not well taken. The defendant has not filed an answer to the complaint. The court cannot speculate as to whether the defendant will admit the existence of the leases, or assert some defense to the enforceability of the leases between plaintiff and defendant. If that be the case, and if defenses are asserted and prevail, the plaintiff would be deprived of his absolute right to plead in the alternative by the granting of the motion to strike the third count. It should be obvious that this cannot be allowed to happen. Hence the motion to strike is at best premature, pending the defendant's answer.
The defendant's position in this motion to strike is not CT Page 8746 supportable from a substantive standpoint. Assuming that the defendant will eventually admit the existence of the lease and the wording of its specific provisions, yet it does not appear that the provisions of the lease upon which the defendant relies as concerns lack of ambiguity are in fact clear and unambiguous.
The plaintiff claims, in this count three, that the defendant "would operate the civic center according to the hours set forth in the Lease". The lease, paragraph 15, contains the provision that "Tenant shall at all times during the term hereof . . . (b) remain open for business from 10:00 a.m. to 9:00 p.m. Monday through Saturday from 12:00 noon to 5:00 p.m. on Sunday . . . during the term hereof and shall remain open with respect to times of opening or closing for such days, nights and hours as the majority of the tenants located within the actual complex are open for business."
What does this mean? Does it mean that the majority of the tenants have the right to shorten the business hours that the plaintiff needs to operate a profitable business? Alternatively, does it mean that if the majority wishes to remain open longer than the set forth business hours, the tenant will abide by the longer hours? Further, what is the obligation of the defendant to keep the Center open during those specified hours? The lease is silent as to any such obligation on the part of the landlord/defendant.
The tenant plaintiff claims that the Aetna — landlord madeclear and definite promises to tenant De la Concha that, among other things, "it would (i) operate the Civic Center according to the hours set forth in the lease; . . ."
The tenant further claims that the Aetna promised that it would "insure that the Civic Center's stores were occupied." That provision does not appear in the lease.
The tenant further claims that the Aetna promised that it would "undertake its best efforts to attract businesses to the Civic Center and promote, support and maintain the Civic Center." A review of the lease, Para. 28, provides that the tenant will pay into a "promotional fund", but does not specifically require that the landlord engage in any particular or specific promotional activity or even a particular level of intensity as to promotional activities. What then does this provision mean? Does it allow the landlord to take the money and do nothing? CT Page 8747
The concept of promissory estoppel provides a means whereby a promise may be enforced without the usual indicia of conventional bargained for consideration. It pertains to "a clear and definite promise which a promissor could reasonably have expected to induce reliance." See Pavliscak v. Bridgeport Hospital,48 Conn. 580, 572, 593, and footnote 5, P. 592 (1998).
To the extent that it is claimed that these agreements are outside the terms of the lease, are without specific consideration, and were made to induce reliance, the plaintiff would have pleaded a cause of action in Promissory Estoppel. On the other hand, if it be concluded that the alleged oral agreements were "(1) to explain an ambiguity appearing in the instrument; (2) to prove a collateral oral agreement which does not vary the terms of the writing; (3) to add a missing term in writing which indicates on its face that it does not set forth the complete agreement; or (4) to show mistake or fraud;" TIECommunications, Inc. v. Kopp, 218 Conn. 281, 288, 289 (1991), then the alleged oral agreements may be supported by the lease consideration, and hence outside of the Parole Evidence Rule, as part consideration for the contract. This cannot be determined without a full exploration of all the facts.
The motion to strike the third count of the complaint is denied.
 II. The Fourth Count of the Complaint, Negligent Misrepresentation.
The defendant's position, in its brief, is that the plaintiff has admitted that the defendant "reduced the Civic Center's operating hours in the 1990's." However the complaint, para. 13 of the introduction to which the defendant refers, does not state that proposition. Hence the defendant may not rely upon that proposition to plead what appears to be waiver or estoppel when the lease was renewed on March 1, 1995. The defendant cites paragraph nine of the complaint for the proposition that in 1990 it is claimed that the defendant ceased promoting the Civic Center. The desire to sell the Civic Center does not however, necessarily mean that the defendant stopped promoting the Civic Center and its viable tenants in 1990. Hence the complaint does not necessarily imply that the defendant engaged in those acts in 1990. Further, even if there was some level of reduction in 1990 CT Page 8748 that does not necessarily imply that such reduction was significant and materially harmful to the plaintiff's business interests prior to 1995.
The argument that there was a written lease has been dealt with previously in this decision.
The motion to strike the fourth count is denied.
 III. The Fifth Count of the Complaint, Tortious Interference.
The plaintiff claims that the defendant has tortiously interfered with its contractual relationship with its patrons, customers and suppliers. The allegations of the count are capable of two interpretations. First, that the Aetna intended to interfere with the plaintiff's business relationships so as to make continual occupancy by the plaintiff so unattractive as to cause the plaintiff to abandon the Civic Center, consistent with the alleged purpose of clearing out existing tenants of the Civic Center.
The second interpretation appears to be that by failing to support the plaintiff, as aforesaid, it was foreseeable that business relationships with others would fail, thus alleging that the defendant's activity was a foreseeable proximate cause of the failure of the plaintiff's business relationships.
Under either of these theories the plaintiff may have a cause of action for tortious interference. Paragraphs 9, 10, 11, 14 and 15 all allege a concerted effort on the part of the defendant to clear out the Civic Center of tenants so that the defendant could sell the center to developers. "In an action for intentional interference with business relations we think the better reasoned approach requires the plaintiff to plead and prove at least some improper motive or improper means. Blake v. Levy, 191 Conn. 257,262 (1983). The plaintiff has satisfied this requirement.
The motion to strike the fifth count of the complaint is denied.
 IV. The Sixth Count of the Complaint, CUTPA. CT Page 8749
The defendant properly pleads that a simple breach of contract is insufficient to support a claim of violation of CUTPA. However, the plaintiff does not rely simply upon breach of contract, but rather incorporates representations made outside the literal terms of the contract, as aforesaid. Further, the plaintiff claims that the defendant's intentional acts are precipitated by an improper motive, namely to force the tenants out of the Civic Center, so that the Center can be sold to outside developers.
These allegations transcend the concept of a single breach of lease between the defendant and a single tenant, the plaintiff. One of the criteria from a CUTPA claim is "whether it is immoral, unethical, oppressive or unscrupulous." Fisk v. Goldenback,238 Conn. 15 P. 215. At very least it is a question of fact as to whether the alleged conduct of the defendant, if proven, violates one of the prongs of the "cigarette test" requirements for a CUTPA claim.
The motion to strike the sixth count of the complaint is denied.
In summary the motion to strike the third, fourth, fifth and sixth counts of the complaint is denied.
L. Paul Sullivan, J.