MURPHY et al. v. BENSON. (No. 6420.)*

(Court of Civil Appeals of Texas. Austin. April 5, 1922. Rehearing Denied Nov. 29, 1922.)

1. **Judgment** ⚫═►732—**Decree in vendor's lien foreclosure suit, awarding purchaser abatement for deficiency, held not res judicata as to whether purchaser took beyond supposed division line.**

Where vendor brought action to foreclose vendor's lien as to land embraced within purchaser's fences, in which purchaser sought abatement in price for deficiency in acreage and reformation of the conveyance, so as to require purchaser to pay only for the land actually received, decree awarding vendor foreclosure on the east one-half of such survey, expressly stating that the foreclosure was intended to cover only so much of the east one-half thereof as was included in the purchaser's fences, and was not to affect the other portion within fence lines of adjoining owner lying west of the division fence line between the land of the purchaser and that of the adjoining owner, and awarding purchaser abatement in purchase price for deficiency, but not decreeing reformation of the conveyance, *held* not res adjudicata in subsequent action between same parties as to whether purchaser by such conveyance acquired title to a strip of land west of such division fence line; title not being in issue or adjudicated.

2. **Boundaries** ⚫═►46(3) — **Adjoining owners held not concluded by agreement, based on mistake, fixing division line.**

A practical location and agreement, based on mutual mistake, made without any doubt, dispute, or uncertainty existing in the minds of the parties as to the proper location of the true division line between them, *held* not conclusive.

3. **Reformation of instruments** ⚫═►17(1)— **—Deed executed under mutual mistake as to location of boundaries of survey reformed, so as to convey land intended.**

Where deed conveying the east one-half of a certain survey was executed in the belief on the part of both the vendor and the purchaser that all of the land conveyed was east of a certain line, but because of a mutual mistake as to the location of the boundaries of the survey the east one-half thereof included land west of such line, the deed will be reformed, so as to convey merely the land east thereof.

4. **Reformation of instruments** ⚫═►24—**Vendor's failure to refund part of consideration held not to preclude reformation of contract and deed, so as to convey land actually delivered.**

Where deed describing one-half of certain survey was executed in the belief on the part of both the grantor and the grantee that only such portion of the survey east of a certain line was being conveyed, and purchaser did not acquire possession of land west thereof, vendor's failure to refund or offer to refund any part of the consideration did not preclude court from reforming the contract and deed, so as to provide for the conveyance merely of the land east of such division line; the vendor never having sold nor delivered any part of the lands west thereof.

5. **Judgment** ⚫═►729—**Vendor's lien foreclosure decree held not to preclude equity from reforming deed as to land conveyed.**

Where vendor, who had conveyed the east one-half of certain survey under mutual mistake as to the location of the boundaries of the survey, brought action to foreclose vendor's lien only as to that portion of survey east of a certain line, and the decree confined the foreclosure to the land east thereof, and expressly excepted land west thereof, the decree did not preclude equity in subsequent action from reforming the contract and deed, so as to convey merely the land east thereof.

6. **Improvements** ⚫═►4(3, 6)—**Value of improvements placed on another's land in good faith by mistake may be recovered in independent action.**

Where purchaser in good faith and as the result of a mistake as to the boundary of the land purchased placed improvements on adjoining land, his assignee can recover the value of the improvements, either in trespass to try title or in an independent action for the purpose, or in defense of a suit for removing the improvements.

7. **Judgment** ⚫═►735—**Decree in vendor's lien foreclosure suit awarding vendor title to certain land not conveyed held not to preclude purchaser's assignee from recovering in subsequent suit for improvements placed thereon.**

Where vendor, who had conveyed the east one-half of a certain survey under mistake as to boundary lines of survey and in the belief that she was selling land which in fact constituted a part of another survey, brought action to foreclose vendor's lien, judgment awarding vendor such land did not preclude assignee of purchaser, who was not a party to such branch of the case, from recovering in subsequent suit for value of improvements placed thereon, since purchaser was not required to intervene in such branch of the case and further complicate the foreclosure suit with

---

⚫═►For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error refused January 10, 1923.

a claim for improvements; such matter not having been put in issue.

Appeal from District Court, Tom Green County; C. E. Dubois, Judge.

Suit by A. G. Murphy against Lillie Benson, in which others intervened, adopting the pleadings of plaintiff. From the judgment rendered, plaintiff and interveners appeal, and defendant cross-appeals. Affirmed.

M. E. Sedberry and Thomas & McCarty, all of San Angelo, for appellants.

Blanks, Collins & Jackson, of San Angelo, for appellee.

## Findings of Fact.

BRADY, J. On October 10, 1906, P. I. Elder conveyed to Miss Lillie Benson, appellee here, all of survey No. 10, block A–2, in Schleicher county, Tex., purporting to contain 640 acres. On January 4, 1916, Miss Benson conveyed the west half of the survey to J. M. Choate, and the east half to T. J. Lassater; the deed to Choate being first in point of time. Both sales were entirely on credit, and the deeds retained vendor's liens. On April 23, 1919, Choate reconveyed his half to Miss Benson; the deed reciting the cancellation and rescission of the contract of sale under which Choate acquired the land, and the cancellation of the notes. On November 26, 1920, Choate executed a correction deed to Miss Benson, correcting the description of the land conveyed in his prior deed.

On June 10, 1918, Miss Benson brought suit in the district court of Tom Green county, Tex., against T. J. Lassater, C. S. Chick, L. J. Shugart, Willis Huey, and the appellant, A. G. Murphy, to foreclose the vendor's lien and also a deed of trust lien on so much of section 10 as was inclosed within the fence lines of the defendant Lassater. Lassater, Murphy, Chick, and Huey answered, alleging that the notes sued on were executed as part of the purchase price for the east half of survey 10, but that at the time Lassater purchased the land he was led by Miss Benson to believe that his purchase contained 320 acres, but that in fact it only contained about 260 acres. These defendants, other than Lassater, alleged their suretyship for him on the first note of $300, and all of the defendants prayed that the court adjust and reform the conveyances and the notes, by reducing the indebtedness to an amount equal to the purchase price of $8 per acre on the number of acres actually owned by Miss Benson and conveyed by her to the defendant Lassater.

The defendant Chick, by way of cross-action, sought to recover all of the west half of survey No. 7, in block A–2, lying north of survey 10, in trespass to try title, against Miss Benson and his codefendant Lassater. One J. J. Smalley intervened in the suit, and

sought, in trespass to try title, to recover against the same parties the east half of survey No. 7. The defendant L. J. Shugart filed a cross-action to recover against the same parties the south part of survey 8, being a part of the Martha E. Taylor survey, lying on the east and next to the Davis fence. To these several pleadings and cross-actions Miss Benson interposed a general denial and a special answer, alleging that Lassater only purchased from her so much of survey 10 as fell within the limits of the fences inclosing his premises, and that she was only seeking to foreclose her lien on so much of said survey as lay south of the Ozona-Eldorado public road and east of the division fences between the Lassater lands and the west half of the survey, which she had sold to J. M. Choate. By way of trial amendment, she also sought, by trespass to try title, to recover of Choate and Smalley so much of survey 7, block A–2, as lay south of the Ozona-Eldorado public road.

That suit was tried before the court without a jury, and judgment was rendered April 24, 1919. The judgment awarded the plaintiff, Miss Benson, the sum of $2,740.90, with interest from the date of judgment, against the defendant T. J. Lassater, and the further sum of $347.69, with interest from date of judgment, jointly and severally against Lassater, Murphy, Huey, and Chick, with foreclosure of the vendor's and deed of trust liens as the same existed on January 4, 1916. A full description of the land as foreclosed is as follows:

"The east one-half of section No. 10 in block A–2, abstract No. 1300, located by virtue of certificate No. 830, issued to Adams, Beaty & Moulton, which said survey is described as follows: 'Beginning 1,900 vrs. S. from an earth mound inclosed by a triangular wire fence, the S. E. corner of survey No. 25, block 57, State University lands, this beginning point being the S. E. corner of survey No. 7, block A–2, A. B. & M.; thence south 1,900 vrs. for S. E. corner this survey, being N. E. of survey 9, same block; thence west 1,556 vrs. to the east line of block 2, G., C. & S. F. Ry. Co. land for the S. W. corner said survey 10; thence N. ¼ W., with the east line of said block 2, 1,900 vrs. to the lower S. W. corner of survey 7, same block; thence E. 1,564 vrs. along the S. line of said survey No. 7, to the place of beginning.' This foreclosure, however, is intended to cover and does cover only so much of the said east one-half of said section No. 10, as is included within what is known as the T. J. Lassater fences, and in no wise affects what is known as the J. M. Choate west one-half of said section No. 10, containing 320 acres, as the same is found within the fence lines of the said J. M. Choate, and lying west of the division fence between the said J. M. Choate and the defendant T. J. Lassater."

The judgment expressly recites that the plea of failure of consideration and prayer for abatement of the purchase price is sus-

tained, and that the defendant Lassater is entitled to abatement on the principal covering the 90 acres lost to Shugart, at the original purchase price of $8 per acre; it being further recited that Lassater, having been in continuous possession of all the lands conveyed and delivered to him by the plaintiff, including those awarded to L. J. Shugart, was therefore not entitled to any abatement of interest on the notes. Miss Benson was given judgment against Chick and Smalley for that part of survey No. 7, sued for by her, lying south of the Ozona-Eldorado road. Shugart was given judgment against Miss Benson and Lassater for the land sued for by him in his cross-action. No appeal was taken from this judgment, and the appellant here, A. G. Murphy, on August 4, 1919, paid off the judgment in full; he having in the meantime become the owner, by deed, of Lassater's part of the section. The release from Miss Benson discharged and quitclaimed the judgment as a moneyed recovery, but expressly declared that such judgment as to other issues involved in the cause should not be affected by the release. On October 1, 1919, Lassater and wife conveyed to Murphy all their right, title, and interest in the dwelling house and other improvements erected by Lassater on land thought at the time to be on the east half of survey 10.

The present suit was filed by appellant, A. G. Murphy, the other plaintiffs intervening as his children and heirs of his wife, who died after the institution of the suit, and adopted the pleadings of Murphy. The first amended petition set up two distinct causes of action; one for improvements mistakenly placed by Lassater, their grantor, on section 7, lying just north of section 10, in the belief that he was locating same on the east half of 10, and the other action being in trespass to try title for the east half of survey 10.

Miss Benson, the appellee, disclaimed as to all the land sued for by appellants, except the west 320 acres of the survey, and thereby limited the controversy to the title to a strip of 57½ acres lying west of the Lassater fence lines. In addition to the pleas of not guilty and general denial, she specially pleaded that, when she purchased survey 10, she was informed by her grantors that the Davis fence on the east, the Ozona-Eldorado road on the north, and the Rae fence on the west, and a line running parallel with the road, one mile south and connecting the Rae and Davis fences, constituted the boundaries of her survey; that the sales to Lassater and Choate were made with the definite understanding between the parties that such were the boundaries of her land; that when the deeds were executed all three parties understood that Choate was getting the 320 acres of land adjoining the Rae pasture, and that Lassater was to get the other 320 acres lying west of the Davis fence and

adjacent thereto; that the contract of sale and deed to Lassater were made under a mutual mistake as to the actual boundary lines of survey 10, and should be so reformed and corrected as to convey to him only so much of the section as he had contracted for, and so as to exclude therefrom the entire 320-acre Choate tract, which includes the 57½ acres in controversy; that plaintiffs knew of such mutual mistake, or could have ascertained the same by proper inquiry, because she and Choate had been continuously in possession of the west 320 acres from the date of the original deed to Choate until the trial; and that she did not discover the mistake in description until about two years before this suit was filed. She also pleaded the location and establishment of a division line, by agreement between Choate and Lassater, shortly after they purchased the two halves of the section, and that the line so located ran east of the 57½-acre tract in question, and placed the latter in the Choate inclosure. In addition to the defense of agreed boundary and practical location of the line, locating of fences and building of valuable improvements by Choate on the land in controversy was alleged.

It was further pleaded by Miss Benson that in the former suit of Benson v. Lassater the issues here sought to be raised were adjudicated, proper rebate having been made for the acreage lost by Lassater, and that the effect of the judgment was to give him all the relief which he was entitled to, and in effect to adjudicate the title of the 57½ acres in controversy. In response to appellants' claim for improvements placed on section 7, in addition to general pleas, appellee, Miss Benson, specially pleaded that the title to this strip had been adjudicated in the former suit of Benson v. Lassater, in which Chick and Smalley intervened and filed cross-actions, claiming that part of survey 7 upon which Lassater had located his improvements, and neither Lassater nor Murphy made any claim or suggestion of improvements in good faith.

Appellants made answer to these pleadings by supplemental petitions, the nature of which will be indicated in the opinion. At the conclusion of the testimony, the court, upon motion by appellee, instructed a verdict in her favor as against appellants' right to recover any part of the west 230 acres of the survey, which included the land in controversy, except a 15-foot strip adjoining the Lassater division fence and located on the west side thereof. The court also instructed in favor of appellants upon their claim for improvements alleged to have been placed by mistake on part of section 7, and submitted to the jury the issues of the value of such improvements and of the land on which same were placed, which were answered. Judgment was rendered in accordance with these instructions and the findings of the jury.

Appellants have appealed, and appellee has also filed cross-assignments of error, complaining of the verdict and judgment in favor of appellants for the value of improvements.

## Opinion.

Both sides have filed able and elaborate briefs and arguments on this appeal, presenting with great force their respective contentions upon many questions. However, we shall only undertake to discuss the more important questions.

Both parties are urging a former adjudication of the issue of title to the 57½-acre tract in controversy, and there is a sharp contention as to just what the court did decide in the case of Benson v. Lassater et al. Appellants insist that the matter is res adjudicata in their favor, because the defendants in the prior suit, by the plea for abatement of the purchase money, based on deficiency in the east half of the survey, raised the issue as to the quantity, boundaries, and location of the land actually conveyed by the deed from Miss Benson to Lassater; that the court determined in such suit that the east half contained about 262½ acres, and rendered judgment for the purchase money thereof, rebating the defendants for the difference between that quantity and 320 acres, whereby all defenses of appellee were concluded and determined in favor of Lassater and appellants as his vendees.

On the other hand appellee contends that the question of title was adjudicated in her favor in the former suit, because Murphy and Lassater pleaded a shortage in the land sold them by Miss Benson, and pleaded for reformation and adjustment of the conveyance under which Lassater acquired the lands, and the court allowed them full credit for all lands actually lost, and foreclosed the liens only on so much of the east half of section 10 as is included within the Lassater fences, and excepted from the foreclosure the Choate west one-half lying within the fence lines of Choate, and west of the division fence between him and Lassater.

We have carefully considered the pleadings in the former suit, the evidence shown to have been introduced, and the judgment itself, and we are free to confess that it is difficult to determine what was adjudicated. The judgment is not wanting in ambiguity in some particulars, and is perhaps conflicting as to certain recitals. We have concluded, however, that the judgment has not been shown to be conclusive upon the issue of title to the land in controversy as to the claim of either of the parties.

[1] It must be remembered that this was a foreclosure suit, in which it was not ordinarily proper to determine the question of title. Walraven v. Bank (Tex. Civ. App.) 53 S. W. 1028, and authorities there cited. It is true that the court decreed a foreclosure of the liens upon the east one-half of section 10, describing it by metes and bounds, which would apparently describe the 525 acres left in the survey after deducting the number of acres lost by reason of conflicts with older surveys on the west. In immediate connection with this part of the decree, however, and in the same paragraph, it is expressly stated that the foreclosure was intended to cover only so much of the east half of section 10 as was included within the Lassater fences, and was in no wise to affect the J. M. Choate west one-half, containing 320 acres within the fence lines of Choate and lying west of the division fence line between the lands of Choate and Lassater. This is a limitation upon what precedes, and it is fairly apparent, in connection with the pleadings of Miss Benson, that there was no attempt to adjudicate the question of title to the land in controversy.

The real questions adjudicated were the amount of deficiency in the land conveyed by Miss Benson to Lassater, and of which she delivered possession to him, which shortage the court found to be the ninety acres recovered by Shugart, and the extent to which the foreclosure should be granted. For reasons satisfactory to Miss Benson or her counsel, she sought a foreclosure only upon the land lying east of the Choate 320 acres, and, under the issues joined, the foreclosure was limited to this land. As to the defendants, they sought an abatement in price for deficiency, which they alleged to be about 60 acres, but which the court found to be 90 acres, and the abatement for the principal of this quantity was allowed. It is true that defendant suggested the reformation of the conveyance, so as to require defendants to pay only for the land Lassater received; but it does not appear that the court decreed any reformation. We do not agree with either party that the question of title was fairly in issue, or was adjudicated. Therefore the court did not err in refusing to instruct for appellants upon the issue of res adjudicata; nor is the instructed verdict for appellee to be supported upon the grounds that her title to the land in issue was adjudicated by the former suit.

[2] Among the other defenses asserted by appellee and urged as a ground for supporting the instructed verdict in her favor is that of practical location and a boundary agreement between Lassater and Choate, made shortly after the land was purchased by them. Appellants interposed several reasons why this defense is not available to appellee, and cannot be urged to impliedly support the verdict and judgment. While several of these strike us with considerable force, we have concluded to limit our decision to the point that the defense of practical location and agreed boundary is not available to appellee, for these reasons: First, that at the time of the agreement no doubt, dispute, or uncertainty existed in the minds of the par-

ties thereto; second, that the agreement was based on mutual mistake as to the identity of the land about which the parties were agreeing upon the division line. The testimony of Lassater, Chick, and Choate is all to the effect that there was no dispute or doubt in the minds of the parties which they were settling by an agreed line, and that such line was placed where it was and the fences built upon the mistaken belief that the east and west boundaries of the survey were the Davis and Rae fences. While some measuring was done, it was upon the mistaken belief above referred to, and not in settlement of any dispute. Chick, who assisted them, pointed out his gate post on survey 7, to the north of No. 10, as being the middle point of both surveys, and they adopted that point in running the fence south through what they thought to be the middle of survey No. 10. The mistaken belief of the parties itself was doubtless induced by the representations of the agents of Miss Benson, at the time the land was sold to them; all parties being honestly mistaken as to the boundary lines of the survey. In these circumstances, we have no doubt that such agreement would not be conclusive, if shown to be erroneous. Certainly the agreement would not be so conclusive as to bind the parties and authorize an instructed verdict for Choate's vendee. Boigt v. Hunt (Tex. Civ. App.) 167 S. W. 745; Ware v. Perkins (Tex. Civ. App.) 178 S. W. 846, and authorities there cited; 4 R. C. L. "Boundaries," §§ 66, 67.

[3] There is another defense asserted by appellee, and which is claimed to justify the instructed verdict in her favor. It is that she pleaded that Lassater, from whom plaintiffs acquired title, never purchased any part of survey 10 that fell within the Choate fence lines, and never acquired any title thereto, the contract and deed conveying the property to Lassater having been executed as the result of a mutual mistake, and that the undisputed evidence established this defense. We have concluded that this position is well taken. The record shows, without dispute, that Lassater testified that he never purchased any lands from Miss Benson, except those which he had actually fenced, and never purchased or intended to purchase any of the 320 acres of land which were fenced by Choate, and that Miss Benson never sold nor intended to sell him any of the Choate lands. The testimony of Miss Benson is to the same effect. It is true that Lassater stated that he bought the east half of survey 10, and appellants' counsel insist that this raises an issue of fact as to what lands he really intended to buy. This, however, must be taken in connection with repeated positive admissions of Lassater that he never bought any of the 320 acres of land under Choate's fences, except the small strip which was left for a lane, and which appellants recovered in this suit, and his further declarations that he only bought the lands which he actually inclosed by his fence lines. This being true, if the deed covered any lands other than those so fenced by him and any part of Choate's land, it did not reflect the real agreement of the parties, and, having pleaded mutual mistake, appellee was entitled, in equity, to have the contract of purchase and the deed reformed, unless, indeed, appellants occupy some more advantageous ground than did Lassater.

In addition to the testimony of Miss Benson and Lassater in the former case, to which Murphy was a party, Murphy testified that, when he went on Lassater's note, he presumed that he assumed that Lassater bought the lands he fenced, and knew that Choate bought the other 320 acres. Furthermore, he was charged in law with notice of such facts by the continuous possession of Choate and Miss Benson ever since the former bought the lands in 1916. Mullins v. Wimberly, 50 Tex. 457; Bumpas v. Zachary (Tex. Civ. App.) 34 S. W. 672. The following cases are authority for the proposition that in circumstances such as exist here equity will relieve against mutual mistake: Elder v. Bank, 91 Tex. 423, 44 S. W. 62; Durham v. Luce (Tex. Civ. App.) 140 S. W. 850; Harris v. Park (Tex. Civ. App.) 165 S. W. 42; Yarzombeck v. Grier (Tex. Civ. App.) 32 S. W. 236; O'Connell v. Duke, 29 Tex. 300, 94 Am. Dec. 282; Silliman v. Taylor, 35 Tex. Civ. App. 490, 80 S. W. 651; Harry v. Hamilton (Tex. Civ. App.) 154 S. W. 637.

[4] It is insisted for appellants that it would be inequitable to reform the contract and deed, because appellee has not offered to refund any part of the consideration moving to her from Lassater. This suggestion is met by the fact that, under the real agreement shown by the undisputed evidence, appellee never sold nor delivered to Lassater any part of the lands sued for here, and he never paid nor agreed to pay anything therefor. Therefore there was no need to tender back anything.

[5] It is also urged that it would be highly inequitable to grant the relief in question, because in the former judgment Miss Benson was awarded a foreclosure for, and appellant Murphy was made to pay for, the 57½ acres at issue. The facts do not support the claim. Not only does the decree, as has been pointed out, confine the foreclosure to the lands embraced within the Lassater fence lines, but it expressly excepts from it all of the land here sued for. Furthermore, a careful analysis of the judgment rendered in the former suit reveals that the court awarded a money judgment for the principal, interest, and attorney's fees on the notes to the date of trial, less the payment of $720, representing the 90 acres lost to Shugart at $8 per acre. These figures also approximately represent the purchase price for 320 acres at $8 per acre, with interest and attorney's fees as stipulated in the notes, less the

abatement for the Shugart 90 acres. It thus fairly appears that Murphy was not made to pay for any part of the land in controversy. It must be remembered, in this connection, that as to the strip of about 25 acres north of the Shugart lands, and which was also inclosed within Lassater's fences, he neither tendered back possession thereof nor pleaded eviction or superior outstanding title.

.It is further argued for appellants that the decree rendered by the trial court is erroneous, because it in effect awarded a reformation, so as to convey only a part of the land originally intended to be conveyed by the deed. In this we think counsel overlooked the important fact that the undisputed evidence shows that it was the intention of both parties that Miss Benson was selling and Lassater was buying only the land lying east of the Choate land inclosed within his fences, except the small strip of 15 feet, for which appellants were given judgment. The decree is in conformity with the facts, and does not amount to only a partial performance of the contract as made.

[6] The cross-assignments of appellee complain of the verdict and judgment for appellants, for the value of the improvements placed by Lassater, through mistake, on a part of section 7. Among other contentions, it is urged that there is error in this part of the judgment, because appellants were not entitled to proceed in an independent action to sue for the value of the improvements, and also because this issue was adjudicated in the former suit of Benson v. Lassater. On the first point, that a claim for improvements upon the lands of another can only be asserted defensively in cases where the owner, as the actor, seeks legal redress of some character, there are two lines of decisions, one sustaining and the other denying this proposition. We prefer to follow the authorities which hold that relief will be granted in equity to a party making improvements in good faith, by mistake, upon the land of another, either in suit of trespass to try title, or in an independent action for the purpose, or in defense of a suit for removing the improvements. Some of the cases in other jurisdictions are collated in Tiffany on Real Property, vol. 1, p. 943, § 274, and the following Texas cases seem to support the view that the value of the improvements may be recovered in an independent action, although the owner of the land may not see fit to proceed as actor: Long v. Cude, 75 Tex. 225, 12 S. W. 827; Wood v. Cahill, 21 Tex. Civ. App. 38, 50 S. W. 1071; Memphis Cotton Oil Co. v. Gist (Tex. Civ. App.) 179 S. W. 1090; Scott v. Matthews, 14 Tex. 235; Saunders v. Wilson, 19 Tex. 194; Patrick v. Roach, 21 Tex. 255; Van Zandt v. Brantley, 16 Tex. Civ. App. 420, 42 S. W. 617.

[7] As to the claim that appellants are concluded, by the former judgment in Benson v. Lassater, from asserting any claim to the value of the improvements erected on that part of section 7 lying south of the Ozona-Eldorado road, the record does not sustain this contention. It is shown that in the former suit Miss Benson sued and recovered, in trespass to try title, this part of the land; but her suit was confined to Chick and Smalley, who disclaimed. Although she knew at the time of the trial in that case that Lassater had erected improvements thereon in good faith, she did not see fit to join him as a defendant in that branch of the case; neither did Lassater make any issue with relation thereto. We think he was fully justified in not intervening therein and further complicating a foreclosure suit with a claim for improvements. This question was not adjudicated, nor attempted to be adjudicated, and appellants are not concluded by the judgment in the prior suit.

It follows, from what has been said, that all assignments, both of appellants and appellee, should be overruled, which is accordingly done.

No reversible error appearing, the judgment is affirmed.

Affirmed.