DENT v. BOWERS.

Opinion delivered November 3, 1924.

1. HIGHWAY—RIGHT OF ADJACENT OWNER.—Subject to the easement of the public in a street to use and enjoy it as a highway, the fee therein belongs to the owners of adjacent lots.

2. FIXTURE—FILLING STATION.—A gasoline filling station, consisting of a 500-gallon tank buried under the sidewalk and a pump connected with such tank, not being removable without permanent injury to the freehold, will be held, in the absence of an agreement to the contrary, to be a fixture and to pass as an incident to the conveyance of the lot on which it is situated.

Appeal from Lawrence Chancery Court, Western District; *Lyman F. Reeder*, Chancellor; reversed.

*W. E. Beloate* and *Geo. G. Dent*, for appellant.

*Cunningham & Cunningham*, for appellee.

WOOD, J. On the 25th of September, 1922, Clay Henderson conveyed to George G. Dent, by warranty deed, a certain lot or parcel of ground in the town of Imboden, Arkansas, lying at the corner of Main Street and the alley dividing block 2 east and west on the north side of the alley. The lot is particularly described in the deed. Situated on the lot was a two-story brick building, fifty-one feet front by seventy feet deep. At the time of the purchase the building was occupied by G. W. Bowers under an oral lease from Clay Henderson. Bowers was using the lower floor of the building as a garage. After purchasing the property, Dent and Bowers could not agree upon the rent, and Bowers began the construction of another building for a garage, and claimed that he owned a certain pump and gasoline tank designated as a "filling station," having purchased the same from one O. H. McKamey, a former tenant, and also that he owned certain indoor fixtures which he had purchased from Henderson. He was threatening to remove this filling station and the alleged indoor fixtures to his new garage when Dent instituted this action to restrain him from so doing.

In his complaint Dent alleged that he was the owner of the property claimed by Bowers; that same was included in his purchase from Henderson. Bowers denied that Dent was the owner of the property, and the issue thus joined was submitted to the trial court upon substantially the following evidence:

Dent testified in his own behalf. He introduced the deed above mentioned, and testified that, under the sidewalk and gutter of the street, was a gasoline tank used in connection with the garage. The pump to the tank was situated on the outer edge of the pavement, and the concrete pavement extended to and was joined to the building. There was a partition running up to

the ceiling to cut off the office and the place for materials used for the repair of cars. There were also cabins for bolts and counters and shelving. The shelving and also the partition were attached to the building. The counters were held by their own weight, but were a part of the partition. The counters and partition could not be removed without damage to the building. The gasoline tank could not be removed without damage to the building and sidewalk in connection therewith. These things were taken into consideration by him when he purchased the lot. He did not know at the time of his purchase that Bowers claimed to own the property.

Clay Henderson testified that, at the time he sold the property to Dent, he did not own the gasoline tank. The building was erected fifteen years ago, and the tank and filling station were put up in 1917. It is in no way connected with the building, and is at least five feet from the property line. He did not consider that he owned the shelving, counters, bolts and part cabins used in the garage. He sold all the stock and fixtures to Hill Brothers. He stated that Dent was aware of the fact that witness did not transfer title to the fixtures and the gasoline tank and filling station. Witness was asked if anything was said by him to Dent at the time of the sale or before in regard to the ownership of the gasoline tank and fixtures, and he answered: "Dent at numerous times talked to G. W. Bowers and a real estate agent at Imboden relative to this property. In fact, the deal was practically made by these parties. They had witness' terms, and he only talked to Dent on two occasions previous to the closing of the deal, at which time he told Dent about the gasoline tank and fixtures to the building." Witness was further asked to state what he said, if anything, to Dent at the time of the trade as to what went with the building, and stated: "At the time the deal was made they were placing a concrete floor in the front end of the building, and I tried to get Mr. Dent to assume payment of this amount. He refused, and the deal went through with me paying this amount, and he realized

that that was all about which there was any controversy.'' Witness further stated that he transferred the title to the tank by a bill of sale to Hill Brothers in 1918. They occupied the building under an oral contract of lease, and sold to Oscar McKamey. He occupied the building under the same kind of contract as Hill Brothers. He sold to Grover Bowers, and Bowers rented the premises from witness under oral contract until witness sold the property to Dent. Witness was asked to give a complete detail of his contract of sale to Dent, and stated that he prepared the deed himself. Dent understood that he was only getting the building, and witness did not try to pass title to Dent to the fixtures or gasoline station, and Dent knew and realized that he was not obtaining title to anything but the building.

Bowers testified that the gasoline tank and filling station belonged to him. He purchased it from McKamey. He was asked if Dent knew that this property belonged to witness before Dent bought the property from Clay Henderson, and answered: ''I think he did, yes sir.'' Witness was sure that he had talked to Dent about it when he bought McKamey's garage, and he personally talked with Dent and Henderson at the time Henderson sold the building to Dent, and the building was all that was mentioned in their deal, so far as he knew. The gasoline tank and filling station were at the outer edge of a seven-foot sidewalk. The sidewalk was torn up when the tank was installed, and it could be easily removed without damage to the building. There was a seam in the concrete sidewalk where the same was cut to put the tank in, which would enable one to take out the tank and replace the sidewalk just as it was. Witness further testified that the counters and shelving belonged to witness. He bought these from Henderson. Part of these were tacked to the ceiling with small nails, and could easily be removed without damage to the building. Dent knew that these fixtures belonged to witness. Further along in his testimony witness stated that he built the partition and cabinets in the building

and glassed half of the shelving since he had been in the building. The concrete sidewalk was laid up against the concrete foundation of the building. It was put there after the building was built. The sidewalk was in the street, and the tank and filling station were in the street. The tank was buried in the street just outside of the sidewalk, about half of the tank being under the edge of the walk. The concrete had been cut to put the tank in, and the part replaced after it had been buried, leaving a seam in the sidewalk. No connection was made with the building, but the pump was placed at the outer edge of the sidewalk.

McKamey testified that he bought the gasoline tank and filling station from Hill Brothers and sold the same to Bowers. Witness remembered about Dent going to his office and talking about the gasoline tank and other fixtures. Witness had an idea that that was after Dent had bought the lot from Henderson.

In rebuttal Dent testified that Henderson did not say one word to him at the time be bought the property about the sale of any fixtures or the sale of any tank to anybody. The question of the fixtures and tank was not mentioned at all. Witness thought, when he bought the property, that all the fixtures and the tank went with the property. He denied positively that either Henderson or Bowers informed him, prior to his purchase, that the fixtures did not belong to Henderson. Witness naturally thought, when he bought the property, that the fixtures and tank went with the property, as they had been put in there by Clay Henderson, who had used them for a year or so in conducting a garage business. Witness understood that he had rented them with the building to other people. Witness bought them when he bought the property, and, after his purchase, he took charge of them and rented them to Bowers.

The trial court found that Dent was the owner of the indoor fixtures, and entered a decree enjoining Bowers from removing same; but dismissed the complaint of Dent as to the "filling station," and granted Bowers

the privilege of taking up and removing the same. From that decree Dent prosecutes this appeal.

"Subject to the easement of the public in a street to use and enjoy as a highway, the fee therein belongs to the owners of adjacent lots." *Reichert* v. *St. L. & S. F. Ry. Co.*, 51 Ark. 491. See also *Taylor* v. *Armstrong*, 24 Ark. 102. At the time Dent purchased the lot from Henderson, the lot was being used in part as a filling station. While the tank and pump were on the part of the lot dedicated to the public as a street, nevertheless the use of the lot as a filling station by the owner thereof did not interfere with the public use. Henderson did not reserve in his deed the filling station, and, unless the filling station was personal property, Dent acquired title thereto under the deed from Henderson. The filling station consisted of a five-hundred-gallon tank buried several feet in the ground under the sidewalk which joined the building, and a pump connected with the tank at the outer edge of the sidewalk. This tank and pump could not be removed without taking up a section of the sidewalk and without permanent injury to the freehold. The filling station was worth about $300. At the time Dent purchased the property, it was being used partly as a filling station, and, according to the testimony of Dent, that fact entered into the consideration for the purchase, so far as he was concerned. To be sure, Henderson and Dent could have agreed, when Dent purchased the lot, that the filling station was personal property, and therefore did not pass by the deed. There is no evidence of any such contract between them. True, Henderson testified that he did not own the gasoline station at the time of the sale of the lot to Dent, having sold the same by bill of sale to Hill Brothers several years previous, and that Dent was aware of that fact. But he does not state that he expressly informed Dent, at the time of the sale, that the deed did not cover the filling station. Dent, on the contrary, expressly denied that Henderson told him he was getting only the naked building. While Henderson testified that he had sold the filling station to Hill

Brothers by bill of sale, it was not shown that this bill of sale was placed on record. Hill Brothers were not in possession of the property at the time of the sale by Henderson to Dent, and there was nothing to advise Dent that they were once the owners of the filling station, and that Bowers had acquired title through them.

When we consider the character of the filling station and the use of same to which a part of the freehold had been, and was being, devoted at the time of the purchase thereof by Dent, the presumption, in the absence of proof, would be that the owner, Henderson, had annexed the filling station as a permanent accession to his land. 26 C. J. 666; *Choate* v. *Kimball,* 56 Ark. 11; *Bemis* v. *First National Bank,* 63 Ark. 625. See also *Ozark* v. *Adams,* 73 Ark. 227.

A clear preponderance of the evidence shows that the filling station in controversy is a fixture and the title thereto in Dent, under the doctrine of the authorities above cited. The trial court erred in not so holding. The decree is therefore reversed, and the cause remanded with directions to enter a decree in accordance with this opinion.