GENERAL BOX COMPANY *v.* SCURLOCK, COMMISSIONER OF REVENUES.

5-508                                    272 S. W. 2d 678

Opinion delivered November 22, 1954.

*Moore, Burrow, Chowning & Mitchell* and *W. P. Hamilton, Jr.,* for appellant.

*O. T. Ward,* for appellee.

GEORGE ROSE SMITH, J. This is a suit brought by the appellant to recover state income taxes, paid under protest, for the years 1950 and 1951. The taxpayer does business both within and without the State of Arkansas; this dispute centers upon the method that is to be used in determining the company's taxable Arkansas income. The appellant contends that its local profits are correctly reflected by its accounting system. So computed, the tax for 1950 would be $226.83; and there would be no tax due for 1951, as the books show an operating loss in Arkansas for that year. The appellee, the Commissioner of Revenues, contends that the appellant's taxable income should be determined by the application of a formula which, without regard to actual profits or losses in this state, allocates a certain percentage of the taxpayer's national income to its Arkansas enterprises. By this method the tax, with interest, would amount to $1,266.39 for 1950 and to $1,161.13 for 1951. The chancellor upheld the Commissioner's position.

The appellant is a national concern owning various processing and manufacturing plants in several states. It maintains what is described as a decentralized accounting system, by which each unit in the organization keeps independent records that are intended to reflect accurately the profit or loss for that particular plant. The company's officers explain that decentralized accounting was selected for the reason that it is the corporation's policy to pay low salaries to key local employees but to augment those salaries with bonuses on a scale commensurate with local profits. In the administration of this bonus plan the company must know to what extent each individual plant is paying its own way. There is also testimony that a plant which operates at a loss is shut down. Over a period of years two enterprises in Arkansas have been discontinued for this reason.

This system of decentralized accounting was apparently first questioned by the state revenue department with respect to the 1946 income tax return. For that year the company's return, based on its bookkeeping,

showed no taxable income from its Arkansas business. There followed negotiations between the taxpayer and the state's revenue agents. The appellant's secretary states that, "solely for the purpose of producing some tax," the appellant agreed to follow the allocation formula now urged by the appellee. This formula is designed to apportion to Arkansas her fair share of the appellant's national income. Under the formula a ratio of Arkansas business to national business is computed by averaging the relative proportion of Arkansas sales, Arkansas cost of sales, and Arkansas property values. If the average figure so attained is, for example, five percent, then one twentieth of the taxpayer's total annual income is attributed to its Arkansas business, and, *after* the deduction of federal income taxes, the Arkansas tax is computed.

For the years 1946 through 1949 the appellant's tax liability was determined, to the satisfaction of both parties, by means of this formula. Nevertheless the appellant intimated all along that its accounting system was accurate. That is, the appellant inserted in each tax return the figures shown by its accounts, but there was attached to each return an alternative computation prepared pursuant to the agreed formula. The tax was paid upon the latter computation, and we are told that in each year the tax upon this formular basis was larger than it would have been upon the accounting basis.

In 1950 and 1951, as in prior years, the company filed alternative computations and tendered the tax that resulted from the use of the formula. The Commissioner refused to accept the tender as full satisfaction of the tax liability. He pointed out that in 1949 the Arkansas legislature had amended the state income tax law by prohibiting the deduction of federal income taxes. Ark. Stats., 1947, § 84-2016. On this premise the Commissioner applied the formula to the appellant's apportioned Arkansas income *before* the deduction of federal taxes. The appellant refused to accede to this theory, paid the deficiency assessment under protest, and filed the present claim for refund.

Upon these facts the main issue in the case is whether the Commissioner can, despite the taxpayer's objections, insist that the tax be computed not by the formula as originally agreed upon but by the formula as modified by the statute disallowing the deduction of federal income taxes. In our opinion the apportionment formula does not have the force of law and cannot be imposed upon the appellant against its will.

By the income tax law the legislature has undertaken to delegate to the Commissioner the power to promulgate formulas for the apportionment of income. We need not determine whether this delegation of power is constitutional, for the Commissioner has not exercised his ostensible authority in the manner required by the statute.

The law provides that in the case of gross income derived partly from within and partly from without the state, the portion attributable to sources within the state "may be determined by processes or formulas of general apportionment prescribed by the Commissioner with the approval of the Governor." Ark. Stats., § 84-2020 (3, [a]). We do not regard as unimportant the requirement that the formulas be prescribed by the Commissioner with the Governor's approval. The statute contemplates that the Commissioner may adopt such formulas as are necessary to fit the divergent situations presented by the various concerns doing a multistate business, but this action is to be taken with some formality, so that the taxpaying public may inform itself of the governing regulations.

In the case at bar the trouble is that the formula now relied upon by the Commissioner was not, until a month or so before the trial in 1953, approved in the manner required by law. In 1949 the Commissioner issued Income Tax Regulations 10, in which Article 195 fixed a formula embodying only comparative costs of production. This article was soon superseded by an order of December 15, 1950, duly approved by the Governor, which recites that the apportionment shall be de-

termined by formulas prescribed by the Commissioner with the approval of the Governor. Thus the 1950 amendment is merely a paraphrase of the statute, still requiring affirmative action by the Commissioner and by the Governor before a formula can be said to have been prescribed. That additional action had not been taken when the transactions now under review took place.

We conclude that the Commissioner's insistence upon the formula now in question must rest solely upon the agreement between the State and the taxpayer. It is plain enough that the law of contracts does not support the Commissioner's contentions. Since the statute does not authorize the Commissioner to make a permanent and irrevocable contract of this kind, the original agreement was, as to future years, not binding upon the State. *Jobe* v. *Urquhart*, 102 Ark. 470, 143 S. W. 121, Ann. Cas. 1914A, 351. Of course, a contract that purportedly obligates only one party to performance is illusory, binding neither. Furthermore, the State was a party to this agreement, and it was the State itself which elected to eliminate the deduction of federal income taxes. Naturally one party to a contract cannot impose a modification upon the other without his assent, and here the appellant promptly declined to accept the suggested change.

Inasmuch as the taxpayer was not bound by the formula, either by law or by contract, with respect to the years 1950 and 1951, the remaining question is whether the liability for those years should be determined upon the basis of the appellant's accounting system. The income tax law provides that if the taxpayer's method of accounting does not clearly reflect the income, the computation may be made "upon such basis and in such manner as in the opinion of the Commissioner does clearly reflect the income." Ark. Stats., § 84-2007 (b). Thus the Commissioner, apart from the issue of agreed formula, is permitted to question the accuracy of the appellant's decentralized bookkeeping arrangement.

This presents a question of fact that has not been fully developed, because the chancellor found it unnecessary to go beyond the assumed existence of the formula. The appellant offered some proof that its accounts correctly reflect its Arkansas income, but there are also indications to the contrary. For instance, the appellant insists that its policy is to discontinue unprofitable plants, but it is hard to reconcile this policy with the assertion that the company agreed to the formula only to produce some tax, the implication being that there was in fact no taxable income. In equity cases we have discretionary power to remand for further proof, *Brizzolara* v. *Powell*, 214 Ark. 870, 218 S. W. 2d 728; here we think the Commissioner should be afforded the opportunity of questioning the taxpayer's accounting system if he so elects.

Reversed and remanded.