James K. YOUNG *v.*
MOBLEY CONSTRUCTION COMPANY, INC.,
Jimmy D. DALTON and Bill GRAHAM

CA 79-119                                   587 S.W. 2d 837

Opinion delivered September 26, 1979
[Petition for rehearing denied.]
and released for publication October 24, 1979

*Luther B. Hardin,* for appellant.

*James A. McLarty,* for appellees.

GEORGE HOWARD, JR., Judge. We are to decide[1] whether the decree of the chancellor impressing a materialman's lien on real property owned by the appellant — on the theory that an agency relationship existed between

---

[1]This action was originally filed in the Arkansas Supreme Court, but was transferred to this Court under Rule 29(3) of the Rules of the Supreme Court of Arkansas.

purchaser-contractor in possession who made improvements before acquiring the title and the owner — is supported by a preponderance of the evidence.

## THE FACTS

On November 4, 1976, Vernon and Bertha Stewart, husband and wife, entered into an escrow agreement to sell 2.46 acres of land, in Pope County, to Curtis and Virginia Wright, husband and wife, for $9,500.00, payable in monthly installments of $150.00. Peoples Bank and Trust Company of Russellville, as escrow agent, was authorized to receive the monthly installments and to deliver the warranty deed executed by the Stewarts to the Wrights upon payment of the purchase price. The agreement provided that the Wrights were entitled to immediate possession of the lands, but were not to permit any "lien to be impressed upon" the lands.

On January 26, 1977, the Stewarts, pursuant to a provision in the agreement, cancelled the agreement because the Wrights were in default in their payments. Either shortly after cancelling the agreement or immediately thereafter, the Stewarts discovered the Wrights were making improvements upon the lands which consisted, at the time, of a slab of concrete that had been poured obviously as a foundation for a building.

On April 15, 1977, the Stewarts and the Wrights executed a second escrow agreement for the sale of the property and designated the price as $15,000.00, payable in 90 days from the date of the agreement. The Wrights were granted an option to exercise two 90 day extensions for payment of the purchase price upon payment of $500.00 for each extension. An initial $500.00 was paid upon the execution of the agreement, but no further payments were made. This agreement also afforded immediate possession of the lands to the Wrights, but precluded any liens upon the property.

On April 27, 1977, the Stewarts' attorney sent the following letter to appellees:[2]

---

[2]Vernon Stewart after observing an apartment building being constructed upon the property, consulted his attorney and was advised to deter-

My client, Vernon Stewart, is selling some land on an escrow agreement to Curtis Wright, who he understands is building an apartment building on this property. Inasmuch as your firm might be claiming a materialman's lien on Curtis Wright's interest in that land for materials purchased by Mr. Wright and allegedly delivered to that land, you should be aware that Curtis Wright is in no way an employee or agent of Vernon Stewart, has no contract with Stewart to build a building for him or do anything else for him for that matter and that Mr. Stewart has no agreement with your firm or anyone representing your firm that any materials or supplies should be delivered to that property and no agreement that if materials are delivered to that property for any reason that Mr. Stewart will pay for them.

If you have any questions, do not hesitate to contact me or Mr. Stewart . . .

On June 3, 1977, Mobley Construction Company, Inc., filed an action against the Stewarts, the Wrights and C & W Construction — a construction enterprise owned and operated by Curtis Wright making the improvements upon the lands — for a judgment of $5,852.86 for materials — ready mixed concrete, sand and gravel — supplied in connection with the improvements and a materialman's lien against the lands.

Bill Graham and Jimmy D. Dalton, doing business as Jim Dalton Plumbing & Construction Company, intervened seeking judgments for $5,406.96 and $1,009.00 and for a lien against the lands for materials furnished.

It is stipulated that the Stewarts sold the lands in October, 1977, to James K. Young, Esq.

## FINDINGS OF THE TRIAL COURT

The trial court made the following findings in con-

---

mine the identity of the materialmen furnishing supplies in connection with the improvements being made by the Wrights.

cluding that appellees were entitled to a lien against the lands:

4. The Court finds that there was an implied agreement between Vernon H. Stewart and Bertha B. Stewart, as owners of the real property in question, and Curtis Wright, as the contractor of improvements upon said real property, for the buildings, erection or construction of improvements upon said land; . . . that plaintiff . . . and the Intervenors . . . are entitled to a Materialman's Lien . . .

5. The Court finds further that an unjust enrichment would take place but for the finding of this lien . . .

## THE DECISION

It is plain that in order for a materialman or laborer to have a lien upon real property in which he has supplied materials or labor, the materialman has the duty or burden to establish that the supplies or labor were furnished under or by virtue of "any contract with the owner or proprietor thereof, or his agent . . ." Ark. Stat. Ann. §51-601 (1971 Repl.).

Appellees readily concede that while Wright had possession of the lands, Wright never had title inasmuch as the deed of conveyance executed by Stewart was placed in escrow and, consequently, there has never been a delivery. The thrust of appellees' argument is that Wright, in his capacity as the contractor making the improvements, was the agent of Stewart, the owner of the lands. The agency relationship, argue appellees, is predicated upon an implied agreement. Appellees, therefore, conclude that the single issue to be resolved is whether a preponderance of the evidence supports the finding of the trial court that an "implied agreement" existed.

Appellees recognizing, as they must, that an agency relationship is central to their case argue that an agreement, between Stewart as the owner of the lands and Wright as the contractor, is implicit from the fact that Mobley Construction

Company supplied materials for the improvements beginning December 31, 1976, and although Stewart cancelled the first escrow agreement on January 26, 1977, Stewart did not give notice to the materialmen; that Mobley delivered supplies, at the request of Wright, on January 31, 1977, February 1, 1977, and March 18, 1977, aggregating a cost of $2,274.60; that Wright was given a new agreement on April 15, 1977, and the terms were essentially the same as the first, except the price was increased from $9,500.00 to $15,000.00. Appellees stress that Stewart made no effort to explain the difference in the price and, consequently, the trial court was justified in concluding that the increasement is indicative of the fact that Stewart took into consideration that improvements had been made upon the lands and that this was one way of shielding or indemnifying himself against any claims asserted by materialmen.

While we agree that appellees have properly framed the issue tendered for resolution, we are not convinced that the trial court's holding is supported by a preponderance of the evidence.

It is undisputed that the first as well as the second escrow agreement does not show that Wright, either as purchaser of the lands or as a contractor, was the agent of Stewart with the authority to bind Stewart in the purchase of any materials. As a matter of fact, the agreements do not obligate the purchasers in any way to make any improvements to the lands, but on the contrary, expressly provide "PURCHASER further agrees not to allow any lien to be impressed upon said lands . . . or to do any act that will lesser SELLER'S security herein." The fact that Stewart observed the improvements being made upon the lands is not sufficient to imply a contract on the part of Stewart to pay for the improvements or the materials. There is no testimony in the record to show that Stewart ever agreed to pay for any materials. As a matter of fact, Stewart testified that he was not even aware of the fact that improvements were being made or that materials were being delivered to Wright until either shortly before or immediately after he had cancelled the first escrow agreement. Further, it is clear that Stewart disclaimed any responsibility for the improvements by having

his attorney to notify appellees of the relationship that existed between him and Wright. It is plain from this record that Stewart was not consulted about the improvements to be made on the lands and had no knowledge of the terms between Wright and appellees for the materials. See: *Hoffman v. McFadden*, 56 Ark. 202, 19 S.W. 753.

The appellees place enormous emphasis, in support of their argument, on the fact that there is a substantial difference between the sale price for the lands designated in the first escrow agreement and the second agreement. Appellees contend that Stewart's failure to explain the basis for the difference justified the trial court in concluding that Stewart took into consideration the value of the improvements in designating the sale price at $15,000.00 in the second agreement, consequently, Stewart adopted or ratified the cost of the improvements in his "own business transaction." Appellees' argument is merely an assumption for there is no evidence in the record to support this conclusion. It can be readily argued, with equal force and persuasion, that the increased price was due to economic factors as well as any inconvenience that Stewart encountered after the execution of the first agreement. It is plain that Wright made an initial payment of $150.00, under the first agreement, but did not make any further payments although he had agreed to pay monthly installments of $150.00 until $9,500.00 plus interest at the rate of 10% per annum, had been duly paid.

Appellees had the burden of proof to establish the material elements for creating or impressing a lien upon appellant's lands. *Williams* v. *Humphrey*, 97 Ark. 643, 134 S.W. 939; *Arkansas Foundry Company* v. *Farrell*, 238 Ark. 757, 385 S.W.2d 26.

In conclusion, the trial court stated in its findings that an unjust enrichment would take place "but for the finding of this lien." Appellees, however, argue in their brief while the trial court mentioned unjust enrichment, the basis of the trial court's holding was the finding of an implied agreement or agency between the contractor and the owner. Accordingly, we deem it sufficient to state that we are not persuaded that the facts here require the application of the principle that

equity will not permit one to unjustly enrich himself at the expense of another.

We have not been called upon to consider the question whether appellees have the right to remove the improvements from appellant's lands, providing this can be done without substantial damage to the lands. See: *Shick* v. *Dearmore*, 246 Ark. 1209, 442 S.W.2d 198 (1965).

Reversed and remanded for the trial court to determine whether the pleadings filed by appellees are sufficient to justify a finding that appellees may elect to remove the improvements providing this can be done without substantial damage to appellant's lands.